The New England Trust Company, trustee, *vs.* Eleanora S. Watson & others.

Suffolk.   April 6, 1953. — June 1, 1953.

Present: Qua, C.J., Lummus, Wilkins, Williams, & Counihan, JJ.

*Devise and Legacy*, Heirs at law.

Construing as a whole a will providing for payment of income of a residuary trust to the testator's widow and children and for disposition of four twelfths of the principal by payment to children or appointment by them by will or in default of appointment, and directing the trustees, upon the death of the survivor of the widow and children, "to pay over and distribute" the remaining principal "among my heirs at law, the division to be made in all cases per stirpes and not per capita," the words "heirs at law" were not intended by the testator to mean "issue" or to have any meaning other than their normal meaning of heirs determined at his death; and upon the death of the survivor of the widow and children the remaining principal must be distributed to the estates of the children, who were the testator's heirs at his death, rather than to grandchildren living at such survivor's death.

Petition, filed in the Probate Court for the county of Suffolk on January 10, 1951.

The case was heard by *Dillon*, J.

*Alfred Gardner*, stated the case.

*Dunbar Holmes*, (*Richard H. Wiswall* with him,) for Eleanora S. Watson & others.

*Hervey W. King*, for Beatrice I. Nicolls and another.

*Bailey Aldrich*, (*Franklin Dexter* with him,) for The New England Trust Company and others, executors.

*William Minot*, for State Street Trust Company and another, trustees.

WILKINS, J. This is a petition for instructions by the trustee under the will of George S. Winslow, who died on October 9, 1880, leaving a widow and four unmarried children. The principal question is who are the distributees upon the termination of a residuary trust. The language for interpretation is: "Upon the death of the last survivor of my wife and children, I direct my trustees to pay over and distribute that portion of the principal of the trust fund, which shall then remain in their hands, among my heirs at law, the division to be made in all cases per stirpes and not per capita." In the Probate Court a decree was entered based upon the construction that "my heirs at law" means heirs at the testator's death, and directing distribution to the estates of the four children. Respondents who have appealed are grandchildren, who contend that issue is meant, or that the heirs are to be determined at the death of Charles G. Winslow, the last surviving child, on October 14, 1950.

When the will was executed on June 30, 1870, three of the four children, George, Junior, Eleanor, and Amabel, had been born, and Charles was born the following year. Eleanor and Charles died without issue. The appellants are the respondents Beatrice I. Nicolls and Enid A. Gore, children of Amabel; and the respondents Katherine W. Pollock, Anna W. Winslow, and Eleanora S. Watson, children of George, Junior.

Subject to annuities to the testator's mother-in-law, to two brothers, and to two sisters, the residuary trust income was to be paid one third to the widow and the balance to the children in equal shares. Of the principal each son was to receive a prescribed fraction at the age of twenty-five, or if he died before that age he could appoint it by will. A daughter could appoint the same prescribed fraction by will. In default of appointment by a child the unappointed principal was to go to the surviving issue of that child, and if no issue, was to be added to the principal of the other children, and if neither children nor issue, was to go to the widow and brothers and sisters of the testator. In

fact, the sons received their prescribed fraction of principal at the age of twenty-five, and the daughters exercised their powers of appointment. As matters eventuated, this prescribed fraction was one twelfth in the case of each of the four children. It is the balance of principal, amounting to eight twelfths, with which we are concerned.

As the testator left both realty and personalty, a remainder to his heirs is to those entitled to his real estate by descent. Such a gift determines both the persons who take and in what manner and proportions, the statute in substance being incorporated in the will. *Tyler* v. *City Bank Farmers Trust Co.* 314 Mass. 528, 529–530. In the case cited, the applicable rule was stated in these words: "In the accurate use of language, only those entitled to inherit at the death of another can be called his heirs. Accordingly, unless a contrary intention appears, a gift in a will to the heirs of a person, whether he be the testator or a life tenant or another, will be construed as a gift to such heirs determined as of the time of death of that person" (page 531). *Old Colony Trust Co.* v. *Johnson*, 314 Mass. 703, 711–712. *Loring* v. *Sargent*, 319 Mass. 127, 129–130. *Bagley* v. *Kuhn*, 322 Mass. 372, 373–374.

We now turn to the various arguments which have been addressed to us in an effort to show that the Probate Court judge erred in failing to discover in the will the expression of an intention to use "heirs at law" in other than its normal sense.

The words "per stirpes and not per capita" (*Bradlee* v. *Converse*, 318 Mass. 117, 119) following "my heirs at law" shed no light on the time as of which the heirs are to be determined. *Old Colony Trust Co.* v. *Clarke*, 291 Mass. 17, 23. In this connection it is convenient to consider the contention that "heirs at law" means "issue." The paragraph in which the sentence to be construed is found is the only one in the will where "heirs at law" are mentioned, whereas the word "issue" is carefully used elsewhere. *Merchants National Bank* v. *Church*, 285 Mass. 217, 221. It is argued that by the construction adopted in the court

below the phrase "per stirpes and not per capita" becomes surplusage. It happens that in the event which occurred, where the children are the heirs, no additional effect is contributed by the phrase, but in another situation it might have had an effect. See *Balch* v. *Stone*, 149 Mass. 39, 42. While not decisive, let it be noted that, if "heirs at law" means merely "issue," there would have been a partial intestacy had the children died without issue. It should also be noted that when the testator was dealing with issue, as he was with the prescribed fraction which each child might appoint and there was a gift in default of appointment to the issue of a deceased child or, if none, to other children, he was careful to make a gift over to his widow and brothers and sisters.

The normal interpretation that heirs are to be determined at the testator's death is not inapplicable because the heirs are life beneficiaries, or because the gift is in the form of a direction to pay over and distribute at a future time without any words of present gift. *Tyler* v. *City Bank Farmers Trust Co.* 314 Mass. 528, 531, 532. We see no indication in the will that the testator did not expect the life beneficiaries to have any future interest in principal. Compare *Worcester County Trust Co.* v. *Marble*, 316 Mass. 294. In *Taylor* v. *Albree*, 317 Mass. 57, the gift was "to my legal heirs and representatives whoever they may be" (page 61). No authority has been cited for the suggestion that the determination of heirs at the later time was intended because the gift to the heirs is an initial gift and not "a catch-all after the testator had exhausted his specific intentions." Examples to the contrary are *Blume* v. *Kimball*, 222 Mass. 412, *Calder* v. *Bryant*, 282 Mass. 231, and *Old Colony Trust Co.* v. *Clarke*, 291 Mass. 17.

There is no inconsistency in this will between a vested remainder and the powers of appointment given to the children over four twelfths only of the trust property. The sons could appoint by will between the ages of twenty-one and twenty-five years; at twenty-five they would take outright. The daughters, on the other hand, might only ap-

point by will, a provision which was manifestly to equal what the sons might receive at twenty-five or earlier appoint by will. In these circumstances, such cases as *Warren v. Sears*, 303 Mass. 578, *Commissioner of Corporations & Taxation v. Baker*, 303 Mass. 606, and *McKay v. Audubon Society, Inc.* 318 Mass. 482, are not controlling.

Many points of argument serve to suggest the provision the testator might have made had the precise question occurred to him. It must be kept in mind that the will was drawn when the oldest child was but eight years of age. The testator must have realized that the residuary trust might last for many, even seventy, years, as it actually did. There was a paragraph showing that he anticipated that there might be further children, and a later child was in fact born. But it is apparent that he had not anticipated all questions. There was no express provision for the disposition of income should a child die after attaining the age of twenty-one. In the case of Amabel, who died leaving children, instructions of the Probate Court were sought and obtained in 1929. In the case of Eleanor, who died leaving no children, instructions are sought in the present case. It is not surprising that the testator was not closely concerned about his unmarried children's unborn children.

Viewing the will as a whole, we see no clear intention that the testator used "heirs at law" in other than the normal sense. We do not agree with some appellants that "the only reasonable purpose for delaying the possession of the remaindermen was to determine who the distributees would be." More reasonable, in our opinion, was a purpose to enlarge the respective payments of income to those who continued to live to receive it.

The widow was not an heir in 1880 when the testator died. St. 1876, c. 220. *Brown v. Spring*, 241 Mass. 565, 568. *Seavey v. O'Brien*, 307 Mass. 33, 35–36. *Taylor v. Albree*, 317 Mass. 57, 62. Compare R. L. c. 140, § 3, Third. See now G. L. (Ter. Ed.) c. 190, § 1, as amended by St. 1945, c. 238.

There is a minor question as to the disposition of income

accruing between September 19, 1950, the date of the death of Eleanor, and October 14, 1950, the date of the death of Charles. This was not mentioned in the decree. We think that the income on that part of the principal not affected by the exercise of Eleanor's power of appointment and on which she had been receiving the income should go one third to the children of Amabel in equal shares, one third to the children of George in equal shares, and one third to the executors of the will of Charles.

The decree is to be modified by adding an instruction that the income which would have been payable to Eleanor Winslow if she had lived (other than on that part of the principal appointed by her) and which accrued between September 19, 1950, and October 14, 1950, shall be paid one sixth each to Beatrice I. Nicolls and Enid A. Gore; one ninth each to Katherine W. Pollock, Anna W. Winslow, and Eleanora S. Watson; and one third to the executors of the will of Charles G. Winslow. The decree is also to be modified by omitting the reference to income appearing in the record at page 51, lines 1 to 4, which was agreed at the arguments before us to have been inserted in error. As so modified, the decree is affirmed. Costs and expenses of appeal are to be in the discretion of the Probate Court.

*So ordered.*