CHARLES D. TURNBULL, trustee, vs. CHARLES E. WHITMORE
& others.

Suffolk.    March 16, 1914. — May 26, 1914.

Present: RUGG, C. J., LORING, SHELDON, & CROSBY, JJ.

*Trust, Construction, Termination.*

A paragraph of a will made in 1879 contained a provision placing in the hands of
trustees a fund of $100,000 and all of the testator's shares in a certain building
trust, the paragraph closing with the words: "And it is my wish to establish
this trust to continue during the lives of my wife, my two sons and my daughters,
M and C, and during the life of the longest liver of them."    There next fol-
lowed a paragraph directing the trustees to pay quarterly to the wife and to
each of the daughters M and C $2,000 a year, "such payments to be made from
the income and if necessary from the principal of said trust fund of $100,000."
A later paragraph of the will read: "At the death of the survivor of all my
children, my trustees are to divide the capital fund equally among the children
of my five children (being the four already named and my daughter A) each
grand-child taking one equal share, this division to be per capita and not per
stirpes and the issue of any of my grandchildren to stand in the place of the parent."
At the time the will was made A was a widow thirty-nine years of age, who had
received a considerable estate at the death of her husband.    In 1913, after the
death of all the children excepting A, who was childless, the trustees petitioned
for instructions as to whether the time for the termination of the trust had ar-
rived, or whether distribution should await the death of A.    *Held,* that it was
the evident intention of the testator that the trust should not be terminated until
the death of all his children, because otherwise the will would operate to create
a discrimination among the testator's grandchildren, which it was his evident
intention to avoid; and that therefore distribution must await the death of A.
In case of irreconcilable differences between provisions in a will, a clear and un-
ambiguous provision, coming later in the will, controls, as being more likely to
express the final purpose of the testator.

BILL IN EQUITY, filed in the Probate Court for the County of
Suffolk on July 29, 1913, by the trustee under the will of
Charles O. Whitmore, late of Boston, for instructions.

It appeared that the property placed in the hands of the plain-
tiff in trust was a fund of $100,000, and "all of the shares in the
capital stock of the Lexington Buildings Association of which I
shall die possessed."    The first clause, mentioned in the third
paragraph from the end of the opinion, immediately followed
the paragraph first quoted in the opinion and was as follows:

"I direct my said trustees to pay in quarterly payments, to my wife, Mary E. Whitmore and to each of my two daughters named, Martha H. and Charlotte R. clear of taxes, or charges of any kind, two thousand dollars apiece, per annum, during the life of each, such payments to be made from the income and if necessary from the principal of said trust fund of one hundred thousand dollars."

Other material provisions of the will are described in the opinion, where additional facts also are stated.

The suit was heard in the Probate Court by *Grant,* J., who made a decree ordering an immediate distribution of the fund. Upon an appeal by Charles E. Whitmore from that decree, the case was reserved by *Rugg,* C. J., for determination by the full court.

*H. R. Morse,* for the defendant Charles E. Whitmore.

*K. McLeod,* for the defendant Anne L. Whitmore and others.

*J. G. Palfrey,* guardian *ad litem* for minors and persons not ascertained or not in being, was permitted to file a brief.

CROSBY, J. This is a bill for instructions brought by the trustees under the will of Charles O. Whitmore. The will is dated March 15, 1879. The testator died on November 15, 1885; he was twice married; his first wife died in 1849, his second wife survived him and died in 1898. The testator's children were all by his first wife. The only child now living is Mrs. Anna L. Van Rensselaer; she is a widow, without issue, and seventy-four years of age. The grandchildren of the testator are the children of his two sons: Charles E. Whitmore, son of William H. Whitmore; and Sarah O. M. Whitall, Mary I. P. Brown and Anne L. Whitmore, children of Charles J. Whitmore. At the end of the paragraph of the will providing for the establishment of the trust, the following provision appears: "And it is my wish to establish this trust to continue during the lives of my wife, my two sons and my daughters, Martha H. and Charlotte R., and during the life of the longest liver of them." The sixth paragraph of the third clause of the will, which appears therein later than the paragraph above quoted, provides: "At the death of the survivor of all my children, my trustees are to divide the capital fund equally among the children of my five children (being the four already named and my daughter Anna L. Van Rensselaer of New York) each grand-child taking one equal share, this division

to be per capita and not per stirpes and the issue of any of my grand children to stand in the place of the parent." All of the testator's children except Mrs. Van Rensselaer having deceased, the principal question presented is whether the capital of the trust fund shall be immediately distributed among the grandchildren, or whether such distribution is to be postponed until the death of Mrs. Van Rensselaer.

Mrs. Van Rensselaer was given no share, either in the income or principal, of the trust fund. Charlotte R. Whitmore, the last surviving child of the testator except Mrs. Van Rensselaer, died July 11, 1913. If the trust is to be terminated at this time the four surviving grandchildren will each take one quarter, as the distribution is to be *per capita*. If, however, the trust is to continue until the death of Mrs. Van Rensselaer, as the grandchildren take the income by right of representation from their parents, the appellant Charles E. Whitmore will receive one half, and the children of Charles J. Whitmore will take the other half, until such time as the principal of the fund is distributed. It is urged by the children of Charles J. Whitmore that, when the testator declared, "and it is my wish to establish this trust to continue during the lives of my wife, my two sons and my daughters Martha H. and Charlotte R. and during the life of the longest liver of them," he thereby limited the duration of the trust.

It is a familiar rule of law that the particular language of a will, as well as its general scope and purpose, is to be considered in determining the intention of the testator as expressed in it. A reading of this will clearly indicates that the testator intended by the establishment of the trust to provide an income for his wife, his sons and his daughters Martha and Charlotte; it is probable that he did not deem it necessary to make provision for the maintenance of his daughter Mrs. Van Rensselaer, she having received a considerable estate upon the decease of her husband. The language used in the paragraph creating the trust for the benefit of his wife and four children does not refer to the disposition of the principal, and would seem to be more in the nature of a declaration as to the persons who were to be the beneficiaries of the income thereunder than to express the time and manner of the distribution of the principal. *Pope* v. *Pope*, 209 Mass.

432. We cannot read the sixth paragraph of the third clause of this will without it being manifest that it was the intention of the testator to make provision for his grandchildren, and there is nothing to indicate that he intended to discriminate against any of the children of his sons or daughters; it is to be assumed, in the absence of anything to the contrary, that all his grandchildren were to be treated equally, and share alike in the final distribution of the principal of the trust. It is to be remembered that when the will was made Mrs. Van Rensselaer was thirty-nine years of age, and was next to the youngest child — at that time she might have married again and have had children. Accordingly when he provided for the termination of the trust "at the death of the survivor of all my children" by an equal division "among the children of my five children (being the four already named and my daughter, Anna L. Van Rensselaer of New York)," we cannot doubt that he intended the children of his daughter Anna should share with his other grandchildren.

It has been argued that in view of the language of the testator that "at the death of the survivor of all my children," he meant to include only the four children who had been previously mentioned in the will, and only the children who had been given a share in the principal and income of the fund, and that the words, "all my children," are an ellipsis for the words, "all my said children," and that the testator overlooked his wife in this clause because of his previous direction that the trust fund was to continue during her life. It is undoubtedly within the power of the court, in order to give effect to the obvious intention of the testator, where express and formal words have been omitted, to supply them by implication so as to carry into effect his intention if it can be reasonably ascertained from the language used, as was said by Gray, C. J., in *Metcalf* v. *Framingham Parish,* 128 Mass. 370, 374: "If a reading of the whole will produces a conviction that the testator must necessarily have intended an interest to be given which is not bequeathed by express and formal words, the court must supply the defect by implication, and so mould the language of the testator as to carry into effect, as far as possible, the intention which it is of opinion that he has on the whole will sufficiently declared." *Boston Safe Deposit & Trust Co.* v. *Coffin,* 152 Mass. 95. *Jones* v. *Gane,* 205 Mass. 37. *Sanger* v.

*Bourke,* 209 Mass. 481. We are of opinion that upon a reading of the whole will the intention of the testator as to when the trust is to terminate fully appears, and that the court is not required to supply any defects by implication in order to carry into effect such intention; therefore, the rule stated in *Metcalf v. Framingham Parish, ubi supra,* has no application to the case at bar. It is the duty of the court to ascertain the intention of the testator in view of the words which he used; such words are to be given their natural and customary meaning in the absence of evidence that they were employed in a different sense. *Sanger v. Bourke, ubi supra. Heard v. Read,* 169 Mass. 216. *Gray v. Sherman,* 5 Allen, 198.

We are satisfied that when the testator wrote into his will the sixth paragraph of the third clause, he intended that the trust should terminate upon the death of all his children, and that it was not intended by him that it should end with the death of his widow and the four children who were beneficiaries of the income of the trust. As we have said before, the will plainly shows that the testator intended to provide for all his grandchildren. If the interpretation contended for, that the trust is not terminated, is adopted, certain grandchildren might be excluded from any participation in the principal of the fund. This would follow if the four children, other than Mrs. Van Rensselaer, had died, the latter survived and thereafter having children. Such children would not share in the fund. So, too, if Mrs. Van Rensselaer should survive the four children of the testator and should have children, some of whom were born before the death of the four children of the testator and some afterwards, the former would take under the trust and the latter would be excluded. Again, if the four children should die leaving no issue, leaving Mrs. Van Rensselaer surviving, and she should leave a child or children born after the death of all her brothers and sisters, such child or children would not be entitled to the fund, but it would vest in the charities mentioned in the will. We cannot believe that the testator intended to dispose of the principal of the trust to the exclusion of his lineal descendants, or that he intended to make any distinction between his grandchildren.

If these clauses of the will are to be regarded as repugnant to one another, then the familiar rule of construction is to be invoked,

and the later clause must be taken as the expression of the testator's final intention. As was said by this court in *Shattuck* v. *Balcom*, 170 Mass. 245, 251: "It is to be assumed that the testator intended the different provisions of his will to be consistent with one another. They are to be construed, if they reasonably can be, consistently with the testator's intention, so as to avoid repugnancy. In case of irreconcilable differences, a clear and unambiguous provision, coming later in the will, controls, as being more likely to express the final purpose of the testator. For the purpose of arriving at the testator's intention in respect to any particular portion or portions of the will which are doubtful, the whole instrument will be considered."

We are of opinion that under the sixth paragraph of the third clause of the will the trust was not terminated upon the death of the testator's daughter, Charlotte R. Whitmore, but is to continue until the death of Mrs. Van Rensselaer.

It has been argued that the testator's wish that the trust should last for the life of his wife is in conflict with the disposition of the principal of the fund; but upon an examination of the terms of the trust it will be seen that the provision for the testator's wife is expressly payable under the first clause of the will, "from the principal of said trust fund of one hundred thousand dollars," and that the income from the fund derived from the Lexington Buildings Association is to be divided among the four children named to the exclusion of the wife. Under these circumstances it would not seem that the disposition of the fund after the death of all the testator's children is inconsistent with the provision made for his wife.

The only other question presented relates to the disposition of income. The fifth paragraph of the third clause of the will provides that "in case of the death of both my daughters without lawful issue, the income, to which the survivor of the two was entitled, shall thereafter be equally shared between my two sons, the issue of a deceased son to stand in the place of the parent." In view of this paragraph the income accruing between the last distribution of income and the death of Anna L. Van Rensselaer is to be distributed, one half to Charles E. Whitmore and one half to the children of Charles J. Whitmore.

The decree of the Probate Court is reversed. Costs as between

solicitor and client are allowed, to be paid out of the fund, the amount thereof to be determined by a single justice.

*So ordered.*